UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS J. JUZA,

      Plaintiff,

v.                                                         Case No. 19-C-36

WELLS FARGO BANK, N.A.,
*as Trustee for The Registered Holders of Credit*
*Suisse First Boston Mortgage Securities Corp.,*
*Commercial Mortgage Pass-Through Certificates,*
*Series 2006-C4 Trust*,

THE REGISTERED HOLDERS OF CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-C4 TRUST,

KEYBANK NATIONAL ASSOCIATION, and

KEYCORP,

      Defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

On November 26, 2018, Plaintiff Thomas J. Juza filed a complaint against Defendants Wells Fargo Bank, N.A. (Wells Fargo), as Trustee for The Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C4 Trust (Trust), the Trust, KeyCorp Real Estate Capital Markets, Inc. (KRECM),[1] and KeyCorp in Brown County Circuit Court, alleging breach of contract and breach of duty of good faith and fair dealing claims against the Trust as well as tortious interference with contract and tortious

---

[1] KeyBank National Association (KeyBank), the successor by merger of KRECM, Dkt. No. 11-1, was later substituted as a defendant for KRECM. Dkt. No. 22.

interference with prospective economic advantage claims against the Trust, KRECM (now KeyBank), and KeyCorp. The defendants removed the case to this court on January 4, 2019. The court has jurisdiction under 28 U.S.C. § 1332. Before the court is the defendants' motion to dismiss the complaint. For the reasons stated below, the defendants' motion will be granted.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); Fed. R. Civ. P. 12(b)(6). Surviving such a challenge requires that the plaintiff allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief about the speculative level." *Id.* at 555. When reviewing a motion to dismiss for failure to state a claim or for lack of standing, a court must accept all well-pleaded facts as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914–15 (7th Cir. 2015); *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004). "[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citations omitted).

## ALLEGATIONS OF THE COMPLAINT

In April 2006, LaSalle National Bank (LaSalle), as lender, made a loan (the Loan) to Juza Investments II, LLC (Juza II or Borrower), as mortgager, for $17.575 million. The Loan was secured by mortgages (collectively, the Mortgage) upon six commercial properties (the Properties).

Juza executed a personal guaranty (the Guaranty) for the benefit of La Salle, pursuant to which he personally guaranteed the obligations of the Borrower under the Loan in certain circumstances.

In September 2006, La Salle assigned the Loan, Mortgage, and other loan documents to Wells Fargo, as Trustee for the Trust. The Trust is a special purpose investment vehicle utilized to pool commercial mortgage loans and to issue mortgage-backed securities therein on a tax-advantaged basis. A Pooling and Servicing Agreement (PSA) dated September 1, 2006, governed and continues to govern the actions of Trust participants, including Wells Fargo and KeyBank, the Trust's master servicer. As master servicer, KeyBank was charged with diligently administering and servicing the Trust's loans and defending any litigation against the Trust. KeyCorp is a bank holding company that controlled and directed the actions of KeyBank with respect to the administration and servicing of the Loan.

In February 2008, Juza and Juza Investments III, LLC (Juza III)—an entity wholly owned by Juza, which, together with Juza II, owned the Properties collateralizing the Loan—entered into a Membership Interests Purchase Agreement (the Purchase Agreement) with Daniel A. Schmidt Properties, LLC (Schmidt LLC). The Purchase Agreement called for Schmidt LLC to pay $23 million, or $5,739,205 in excess of Juza II's then-current balance of the Loan, to acquire Juza's equity interests in Juza II. The purchase price was to be paid in three components: (1) Schmidt LLC agreed to assume the balance of the Loan ($17,260,795), (2) pay Juza $4,739,205 in cash, and (3) execute a promissory note to Juza for the balance of the purchase price. At all relevant times, Daniel A. Schmidt (Schmidt), the principal of Schmidt LLC, had a net worth far exceeding Juza's.

Section 15 of the Mortgage contained a "due on sale" clause, which restricted the right of Juza II to transfer the Properties while the Loan was outstanding and contained limitations on the

3

transfer of equity interests in Juza II to a third-party purchaser. Section 15(c) of the Mortgage provided that a sale of the Properties and assumption of the Loan "may be permitted during the term of the Note to any entity, subject to Lender's prior written consent, which shall not be unreasonably withheld or delayed," provided that certain terms and conditions were satisfied. Dkt. No. 1-2 at ¶ 14. On March 6, 2008, in an effort to comply with Section 15(c) of the Mortgage, Juza sent a letter to KeyBank with the Purchase Agreement as an attachment, requesting on an expedited basis that KeyBank, on behalf of the Trust, consent to Juza's assignment of his equity interests in Juza II to Schmidt LLC.

On April 2, 2008, through a series of emails, KeyBank responded, informing Juza that his request would be reviewed and that KeyBank required various information from Juza and Schmidt LLC related to the request. On April 21st and 22nd, respectively, Juza and Schmidt LLC, through counsel, provided all of the requested information. KeyBank continued to make "unending requests" for further information, and despite Juza and Schmidt LLC providing the requested information, KeyBank, on May 21st and via a different representative than was previously involved in the approval process, sent an "intentionally dilatory, obfuscatory and purposely deceptive" email to Schmidt LLC's counsel communicating KeyBank's concern that Schmidt LLC was "not putting any cash into the deal, he's simply assuming all of Mr. Juza's debts." *Id.* at ¶¶ 30–31.

Despite believing that their initial Purchase Agreement addressed KeyBank's concern, Juza and Schmidt LLC entered into an Amendment to the Purchase Agreement (Amended Purchase Agreement) in an attempt to meet KeyBank's "illusory, bad faith demands." *Id.* at ¶ 34. The Amended Purchase Agreement provided that Schmidt LLC would put $5,739,205 in cash into the deal, part of which would be used to satisfy outstanding obligations of Juza II and Juza III, and the

4

remainder of which would be paid directly to Juza. In email exchanges between KeyBank and Schmidt LLC's counsel from May 28th to June 4th, KeyBank demanded to know how Schmidt LLC intended to pay the cash amount, counsel indicated that Schmidt's employer would arrange to pay him a bonus sufficient to cover the down payment, and KeyBank stated "KeyBank's approval will be conditioned upon the payment of the bonus." *Id.* at ¶ 40.

KeyBank then demanded further information from Juza and Schmidt LLC and, for the first time, informed them that "[i]f and when KeyBank approves the case it will go to the Special Servicer" and the "Directing Certificateholder," who would have twenty business days to review the case and make their recommendation on consent. *Id.* at ¶ 41. In a June 16th email to Schmidt's counsel, KeyBank warned that the transaction would be rescinded if KeyBank did not receive the requested information by June 20th. On June 23rd, KeyBank issued a termination letter to Juza and Schmidt LLC, stating that their request for consent was rescinded and that they could resubmit their request in the future if they choose. As a result of KeyBank's delay and eventual rescission, Schmidt terminated the Amended Purchase Agreement, causing Juza to suffer millions of dollars of damages.

At some point after Juza and Schmidt LLC's proposed deal fell through, Juza II defaulted on the Loan, which resulted in Wells Fargo instituting an action in Wisconsin state court, Brown County Circuit Court Case No. 10-CV-2340 (the Prior Action), against Juza II for foreclosure on the Properties that collateralized the Mortgage and against Juza for a money judgment pursuant to his Guaranty. Juza filed a counterclaim against Wells Fargo in the Prior Action, alleging that Wells Fargo and the Trust, through KeyBank, unreasonably delayed and failed to approve the assignment

5

of his equity interests in Juza II to Schmidt LLC, in breach of its loan agreement with him and Juza II.

On November 29, 2010, Wells Fargo moved for summary judgment. By orders filed on November 10 and 22, 2011, the state court granted summary judgment to Wells Fargo on the foreclosure claims against Juza II but denied summary judgment against Juza. Following the denial of summary judgment, Wells Fargo and Juza entered into a Stipulation to Dismiss Certain Claims Without Prejudice (Stipulation), which was filed on June 12, 2012. On November 28, 2012, based on the Stipulation, the court filed an Order Dismissing Certain Claims and Thomas J. Juza Without Prejudice (Dismissal Order). The Dismissal Order dismissed without prejudice "Mr. Juza's counterclaim against [Wells Fargo]" and ordered that "[a]ll applicable statutes of limitations shall be extended to and shall expire on the date that is 6 years after the date of this Order." Dkt. No. 13-4 at 2.

In the present case, based on the foregoing allegations, Juza raises six causes of action. Against the Trust, he asserts breach of contract (Count I), breach of duty of good faith and fair dealing (Count II), tortious interference with contract (Count III), and tortious interference with prospective economic advantage (Count V) claims. Against KeyBank and KeyCorp, he asserts tortious interference with contract (Count IV) and tortious interference with prospective economic advantage (Count VI) claims.

**ANALYSIS**

Several of Juza's claims are untimely and barred by statutes of limitations. Juza's tort claims against KeyBank and KeyCorp (collectively, the Key defendants) are barred because the events relevant to the claims against the Key defendants occurred from March to June 2008, and Juza filed this action in November 2018. The parties dispute whether Wisconsin's three-year or

6

Illinois' five-year statute of limitations applies, but either way, the claims are untimely. *See Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1015 (E.D. Wis. 2010) ("[A]ll of the relevant case law indicates that the Wisconsin Supreme Court would find that § 893.57 provides the limitations period for a tortious interference with contractual relations claim . . . ."; Wis. Stat. § 893.57 (2017–18) (three-year limitations period); *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 728 N.E.2d 547, 559 (Ill. Ct. App. 2000) ("An action for tortious interference with a contractual relation has a five-year statute of limitations."). The Dismissal Order in the Prior Action, which stated that "[a]ll applicable statutes of limitations shall be extended to and shall expire on the date that is 6 years after [November 28, 2012]," Dkt. No. 13-4 at 2, did not serve to extend the statutes of limitations for Juza's tort claims against the Key defendants. Not only were the Key defendants not parties to the Prior Action and therefore not bound by the state court decree, *see Taylor v. Sturgell*, 553 U.S. 880, 898 (2008), but also the state court's order tolled only a breach of contract claim against Wells Fargo, not tort claims against the Key defendants. *See* Dkt. No. 13-2 at 6 ("As a result of the plaintiff's *breach of its agreement* with the defendants, defendant Juza has suffered or will suffer damages in an amount to be determined at trial, for which the plaintiff is liable.") (emphasis added); Dkt. No. 13-4 at 2 (ordering that, "[b]ased upon the stipulation," *see* Dkt. No. 13-3, "Mr. Juza's counterclaim against Plaintiff is hereby dismissed without prejudice" and that "[a]ll *applicable* statutes of limitations shall be extended to and shall expire on the date that is 6 years after the date of this Order") (emphasis added).

Juza's arguments to the contrary are unconvincing. Juza reads the Dismissal Order to mean that all statutes of limitations for claims that may arise from the facts underlying the events at issue, whether asserted in the Prior Action or not, were extended. But such a reading contravenes the plain

7

language of the parties' Stipulation and Dismissal Order. Both the Stipulation and Dismissal Order called for dismissal of "Certain Claims" without prejudice, and each claim was specifically identified. Dkt. Nos. 13-3, 13-4. Wells Fargo's Count III "as to Mr. Juza" and "Mr. Juza's counterclaim against Plaintiff" were dismissed without prejudice. Dkt. No. 13-4. Rather than set forth and then extend the specific statutes of limitations for Count III and Juza's counterclaim, the Dismissal Order provided that all "applicable" statutes of limitation would be extended. *Id.* Had the state court intended its order to be read as Juza desires, it could have stated as such. That only the statute of limitations for Juza's breach of contract claim against Wells Fargo was extended also defeats his argument that the Key defendants shared an "identity of interest" with Wells Fargo because the extension of the breach of contract statute of limitations had no impact on the limitations periods for his tort claims. For the same reasons that Juza's tort claims against the Key defendants are time-barred, then, his tort claims against the Trust are also time-barred. The only statute of limitations that was tolled in the Dismissal Order was for the breach of contract claim against Wells Fargo. Had Juza intended to bring tort claims against the Trust, he could have done so in 2012 or before the statutes of limitations for those claims expired.

The defendants also assert judicial estoppel as a second, independent basis upon which to dismiss Juza's claims against the Key defendants. Judicial estoppel is a doctrine of discretion that is intended to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). The defendants argue that Juza should be estopped from raising claims against the Key defendants because he filed for bankruptcy in 2014 and failed to disclose potential claims against the Key defendants in his bankruptcy schedules despite disclosing a "potential claim against Wells

8

Fargo for breach of contract." *See* Dkt. No. 13-5 at 11; *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (aligning with other appellate courts in holding that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends"); *see also Rainey v. United Parcel Serv., Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012) (noting that a debtor "typically will be estopped from pursuing claims for his *own* benefit if those claims were concealed from creditors during the bankruptcy proceedings"). A legal claim is an asset that must be disclosed during bankruptcy so that it can be administered along with a debtor's other assets. *See Stocks v. DoAll Co.*, 340 F. Supp. 3d 789, 791 (E.D. Wis. 2018). Although judicial notice may be taken of matters of public record such as Juza's bankruptcy schedules, *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997), the court will decline to estop Juza from bringing his claims against the Key defendants, which are subject to dismissal on other grounds, because the record is bare of any evidence tending to show Juza's intent to deceive, hide assets from, or make improper use of the judicial process during the bankruptcy proceeding. *See Thompson v. Elkhart Lake's Road Am., Inc.*, No. 15-CV-672-JPS, 2016 WL 1558414, at *5 (E.D. Wis. Apr. 15, 2016); *In re Ortiz*, 477 B.R. 714, 722 (E.D. Wis. 2012).

Juza's breach of contract claim against the Trust concerns the Trust's performance under Section 15(c) of the Mortgage, which requires that the Trust, as lender, not unreasonably withhold or delay its consent for sale of the Properties and assumption of the Loan. The Mortgage is governed by Illinois law, and the parties agree that Illinois law also applies to the breach of the covenant of good faith and fair dealing claim. Dkt. No. 13-6 at 44; Dkt. No. 13 at 13; Dkt. No. 23 at 30. The defendants argue that Juza's breach of the covenant of good faith and fair dealing claim

9

must be dismissed because Illinois does not recognize such a claim as an independent basis for relief. *See Zeidler v. A & W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) ("The duty of good faith, however, does not provide Plaintiff with an independent cause of action."). In response, Juza argues that Illinois recognizes a breach of the covenant of good faith and fair dealing claim when it sounds in contract rather than in tort. *See Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131–32 (Ill. 2001) (describing the covenant of good faith and fair dealing as a "rule of construction, rather than an independent source of *tort liability*") (emphasis added).

The parties are correct that the basis of the claim is important. "It is true that Illinois does not recognize such an independent cause of action *in tort*, but a contractually-based claim for breach of the implied covenant does exist." *In re Wireless Telephone 911 Calls Litig.*, No. MDL-1521, 03C2597, 02C8808, 2005 WL 1564978, at *13 (N.D. Ill. June 3, 2005). This claim exists where a contract specifically vests one party with broad discretion in performing a term of the contract and that party fails to exercise discretion "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Slay v. Allstate Corp.*, 115 N.E.3d 941, 950–51 (Ill. App. Ct. 2018) (citations omitted). As one court observed, however, "[t]he claim . . . boils down to breach of contract: '[T]he obligation to deal in good faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract.'" *In re Wireless Telephone 911 Calls Litig.*, 2005 WL 1564978, at *13 (quoting *Batteast Constr. Co. v. Pub. Bldg. Comm'n of Chi.*, 195 F. Supp. 2d 1045, 1051 (N.D. Ill. 2001)). Where a separately stated breach of contract claim renders the breach of covenant claim

10

superfluous, dismissal of the breach of covenant claim is appropriate. *Id.* ("Plaintiffs have already asserted a separate breach of contract claim in Count VI. Their claim for breach of the implied covenant of good faith and fair dealing, then, is superfluous and will be dismissed . . . ." (internal citation omitted)); *see also Miller v. Ford Motor Co.*, 152 F. Supp. 2d 1046, 1049–50 (N.D. Ill. 2001) (dismissing breach of covenant claim where the underlying allegations were subsumed in a wrongful termination claim, "which is essentially a claim for breach of the employment contract," and failed to state an independent cause of action). Here, Juza's allegations in support of his breach of covenant claim are rendered superfluous in light of his breach of contract claim that complains of the Trust's unreasonable performance under Section 15(c) of the Mortgage. Juza's breach of the covenant of good faith and fair dealing claim will accordingly be dismissed.

Juza alleges that his final claim, breach of contract against the Trust, arises under "the Mortgage, the Guaranty and related loan documents." Dkt. No. 1-2 at ¶ 59. The defendants challenge Juza's standing to raise this claim because it ultimately concerns the Trust's alleged breach of Section 15(c) of the Mortgage and Juza was not a party to the Mortgage; according to the defendants, only Juza II, as Borrower, and the Trust, as successor in interest to LaSalle, the originating lender, were parties to the Mortgage. *See Kaplan v. Shure Brothers, Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) ("Under Illinois law, a cause of action may be brought only by a party to that contract, by someone in privity with such party, or by an intended third-party beneficiary of the contract." (citations omitted)). Juza argues in response that the defendants' failure to challenge Juza's standing in the Prior Action precludes them from doing so here. He also argues that the Mortgage, Guaranty, and underlying promissory note, when read together, make clear that the

11

parties to the transaction understood Juza to be the real party in interest to both the Guaranty and the Mortgage. At the very least, Juza contends, he was a third-party beneficiary of the Mortgage.

Juza's preclusion argument can be rejected. The state court's order in the Prior Action denied summary judgment on Wells Fargo's claim against Juza under the Guaranty due to the existence of a dispute of material fact as to whether Juza II's default was excused. Dkt. No. 23-2 at 10. That order fails to trigger preclusion doctrine because no final judgment was reached on the merits. *See Berry v. Wells Fargo Bank USA, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017) (claim preclusion requires a final judgment on the merits rendered in the prior suit); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1020 (7th Cir. 2006) (same); *R.R. Donnelly & Sons Co. v. F.T.C.*, 931 F.2d 430, 431 (7th Cir. 1991) (denial of summary judgment is not a final judgment). Moreover, Wells Fargo's claim against Juza under the Guaranty is a separate issue from Juza's breach of contract claim. The defenses Juza raised in the Prior Action, including that Juza II's default was excusable, directly related to whether he was liable under the Guaranty. It is therefore unsurprising that Wells Fargo did not raise a standing challenge against a guarantor defending his obligations under the Guaranty. When Juza raised a counterclaim for breach of contract, however, Wells Fargo raised as an affirmative defense that Juza "lack[ed] standing to bring it." Dkt. No. 26-4 at 2. The standing issue is therefore not precluded.

To argue that the Loan documents should be read together and that he has standing to challenge the Trust's breach of the Mortgage, Juza chiefly relies on *Owen Wagener & Co. v. Kale's Collision, Inc.*, No. 89C5433, 1990 WL 106543 (N.D. Ill. July 9, 1990). In *Owen*, the plaintiff, Owen Wagener & Co., entered into a five-year written lease agreement with defendant Kale's Collision, Inc. (Kale). *Id.* at *1. The two other defendants, Roscoe and Kotlarz, signed the lease

on Kale's behalf and signed personal guaranties of Kale's obligations under the lease. *Id.* After Owen Wagener & Co. repossessed the premises and was subsequently unable to find other tenants, it sued Kale for accrued rents under the lease and Roscoe and Kotlarz under their personal guaranties. *Id.* Kale and Kotlarz counterclaimed for damages on lost commissions and business opportunities. *Id.* Owen Wagener & Co. moved to dismiss Kotlarz' counterclaim, which it construed as an action on the lease, because Kotlarz was not a party or in privity with a party to the lease. *Id.* at *3. Relying on the principle that different instruments executed together as part of one transaction or agreement are to be read together and construed as constituting a single instrument, *see McDonald's Corp. v. Butler Co.*, 511 N.E.2d 912, 917 (Ill. App. Ct. 1987), the *Owen* court denied the motion to dismiss because Kotlarz entered into his guaranty at or around the same time he signed the lease and, "[u]pon further factual development, Kotlarz may establish that he either was a party to or an intended beneficiary of the lease agreement." *Owen Wagener & Co.*, 1990 WL 106543, at *3.

The parties dispute the import of *Owen*. Juza argues that *Owen* requires that the Guaranty, Mortgage, and other Loan documents be read as one contract. He points to Section 1.2 of the Guaranty, which defines "Guaranteed Obligations" to include "the unpaid balance of the Loan (as defined in the Note) in the event of . . . (c) a breach of the terms of Paragraph 15 or 16 of any of the Mortgages," Dkt. No. 13-7 at 1, as well as Section 1.7, which states that "Guarantor agrees to the provisions of the Loan Documents," *id.* at 3, and Section 3.1, which states that "Guarantor is an affiliate of Borrower or is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations," *id.* at 7, to argue that the Guaranty manifests the Lender's (and therefore

13

the Trust's) intent to consider Juza a bona fide party to all of the Loan documents, including the Mortgage. The defendants argue that the principle the *Owen* court relied upon is qualified in two ways. First, to be construed as a single contract, two or more instruments must be "executed by the same contracting parties" and, second, there must be no "evidence of contrary intention." *See Tepfer v. Deerfield Sav. & Loan Ass'n*, 454 N.E.2d 676, 679 (Ill. App. Ct. 1983). The defendants note that Juza executed the Guaranty, Juza II executed the Mortgage, and Section 45 of the Mortgage, a no third-party beneficiaries clause, Dkt. No. 13-6 at 99, is evidence that Juza has no claim against the Trust under the Mortgage. The defendants also argue that the *Owen* court's denial of summary judgment due to a factual dispute as to whether the plaintiff was a third-party beneficiary does not militate that Juza, as Guarantor, is to be treated as a party to the Mortgage.

The facts in *Owen* are distinct from the facts here. The defendants' argument that the Guaranty and Mortgage were executed by different parties holds little weight under *Owen*, as the guarantor there "signed the lease on behalf of Kale's," *Owen Wagener & Co.*, 1990 WL 106543, at *1, just as Juza signed the Mortgage on behalf of Juza II. However, as the defendants point out, unlike in *Owen*, here, the Mortgage contains a provision that resolves the question of whether Juza can maintain an action against the Trust. Section 45 of the Mortgage provides:

> **No Third Party Beneficiaries**. The provisions of this Mortgage and the other Loan Documents are for the benefit of Borrower and Lender and shall not inure to the benefit of any third party (other than any successor or assignee of Lender). This Mortgage and the other Loan Documents shall not be construed as creating any rights, claims or causes of action against Lender or any of its officers, directors, agents or employees in favor of any party other than Borrower including but not limited to any claims to any sums held in the Replacement Reserve or the TI and Leasing Reserve.

14

Dkt. No. 13-6 at 99. In construing a contract, courts first look to the language of the contract to determine the parties' intent, and if the words are clear and unambiguous, they are given their plain, ordinary, and popular meaning. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). Only if contract language is ambiguous will courts consider extrinsic evidence to determine the parties' intent. *Id.*; *see also 15th Place Condo. Ass'n v. S. Campus Dev. Team, LLC*, 14 N.E.3d 592, 599 (Ill. App. Ct. 2014) (finding "no good reason to disturb" contractual provisions that were bargained for and agreed upon by sophisticated parties engaged in a multi-million dollar construction project). The language in Section 45 is clear and unambiguous. The provision makes clear that Juza II and LaSalle intended that only Juza II may assert "rights, claims or causes of action against [the Trust]" and that the provisions in the Mortgage inure to the benefit of Juza II and LaSalle (and the Trust, as LaSalle's assignee) and no other party. Dkt. No. 13-6 at 99. Juza therefore lacks standing to raise a breach of contract claim against the Trust. The breach of contract claim will be dismissed, as will the attendant breach of the covenant of good faith and fair dealing claim.

Even were the court to read the Guaranty, Mortgage, and other Loan documents together, the result would not change. Section 1.2 of the Guaranty that includes in the definition of "Guaranteed Obligations" the "unpaid balance of the Loan (as defined in the Note) in the event of . . . (c) a breach of the terms of Paragraphs 15 or 16 of any of the Mortgages" merely means that Juza is liable for the Loan balance in the event that Juza II fails to perform its obligations under Paragraphs 15 or 16. Dkt. No. 13-7 at 1. Section 1.7 of the Guaranty, which states in part that the "Guarantor agrees to the provisions of the Loan Documents," is unremarkable because it concerns Juza's waiver of notice and does not bestow any affirmative right upon Juza. *Id.* at 3. Section 3.1 of the Guaranty provides that "Guarantor is an affiliate of Borrower or is the owner of a direct or

15

indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations." *Id.* at 7. Section 3.1 is Juza's representation that he holds an ownership interest in Juza II and that "induc[ing] Lender to enter into the Loan Documents and extend credit to Borrower," *id.*, through execution of a Guaranty, will either directly or indirectly benefit Juza vis-a-vis his interest in Juza II. But Juza's representation that his partial ownership of Juza II confers on him some benefit because Juza II is being extended credit does not mean that the provisions of the Mortgage inure to his benefit or that he has a specific right to bring an action against the Trust. To grant Juza such a right would be to contravene the plain language of Section 45 of the Mortgage.

Juza's reliance on *Falls v. Silver Cross Hospital and Medical Centers*, 68 N.E.3d 890, 900 (Ill. App. Ct. 2016) (Lytton, J., concurring in part and dissenting in part) to argue that "no third party beneficiary" clauses are not always fatal to a third-party beneficiary claim is unconvincing. Not only does Juza rely on a dissenting opinion that heavily cites non-Illinois cases, but unlike in *Falls* and the case on which Judge Lytton principally relied, *Barba v. Village of Bensenville*, 29 N.E.3d 1187 (Ill. App. Ct. 2015), here, Section 3.1 of the Guaranty, the provision allegedly conferring some benefit on Juza, is Juza's representation as to ownership rather than a provision conveying a positive right on him. Moreover, Section 3.1 of the Guaranty is far broader than Section 45 of the Mortgage, which specifically states that the Mortgage's provisions benefit Juza II, LaSalle, or LaSalle's assignees, and no one else. Section 45 of the Mortgage also states that the "Mortgage and the other Loan Documents shall not be construed as creating any rights, claims or causes of action against Lender." Dkt. No. 13-6 at 99. Juza asks this court to do precisely the opposite of Section 45's express language: to read the Guaranty together with the Mortgage and to construe them such that

16

Juza has a right to sue the Lender or Lender's assignees under the Mortgage. Such a reading would not only render the Mortgage's plain language meaningless, but would also serve to rewrite a contract bargained for and agreed upon by sophisticated parties. *See Southern Fin. Grp., LLC v. McFarland State Bank*, 763 F.3d 735, 743 (7th Cir. 2014) ("Except in the most extraordinary circumstances, we hold sophisticated parties to the terms of their bargain."); *ConFold Pacific, Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 955 (7th Cir. 2006) ("Especially when dealing with a substantial contract between commercially sophisticated parties . . . who know how to say what they mean and have an incentive to draft their agreement carefully, there is great merit to the rule that the meaning of an unambiguous contract is a question of law rather than of fact, with the consequence that unambiguous contractual language must be enforced as it is written." (internal citations and quotation marks omitted)); *see also Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004) ("When a contract is clear and unambiguous, a court will not add terms in order to reach a result more equitable to one of the parties."); Dkt. No. 26-5, Schedule F. The court declines to rewrite the Mortgage.

Juza also argues that he had an affirmative obligation under Section 15 of the Mortgage to obtain the Trust's written consent before selling his equity interests in Juza II to Schmidt LLC and that such a restriction gives him a corresponding right to hold the Trust liable for unreasonably delaying or withholding consent. But Section 15 did not so encumber Juza. Instead, read carefully, Section 15 rendered Juza II in default of the Loan in the event it permitted the sale or transfer of any ownership interests in it without the Trust's prior written consent. *See* Dkt. No. 13-6 at 83–86. In other words, Juza II was responsible for seeking the Trust's consent in the event one of its members sought to sell its membership interest in Juza II. The complaint alleges that "Plaintiff (through his

17

counsel)" contacted KeyBank in an effort to have the sale of his individual equity interests in Juza II to Schmidt LLC approved. Dkt. No. 1-2 at ¶ 23. That Juza rather than Juza II erroneously sought approval under Section 15 of the Mortgage does not somehow confer upon Juza an individual right to sue the Trust under the Mortgage.

Wholly apart from his claim based on the Mortgage, Juza argues that he states a breach of contract claim against the Trust under the Guaranty. Specifically, Juza cites to Section 5.6 of the Guaranty, which provides in part that "Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder." Dkt. No. 13-7 at 11. Whether Schmidt's proposal under the Purchase Agreement to execute a personal guaranty of the Loan "in replacement of Plaintiff's Guaranty," Dkt. No. 1-2 at ¶ 20, constituted an assignment of Juza's duties or obligations under the Guaranty is no matter because this claim fails on two independent grounds.

First, and most simply, Juza's complaint fails to state such a claim. The complaint contains no allegations regarding the Trust's alleged breach of the Guaranty. The only allegation Juza makes to this effect is that "[t]he Trust's actions, conduct and inactions as herein above set forth . . . constituted a material breach of the Mortgage, the Guaranty and related loan documents." *Id.* at ¶ 58. This conclusory claim, which is devoid of supporting allegations, can be rejected outright. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The complaint does not mention Section 5.6 of the Guaranty, much less reference any specific language in the Guaranty; does not mention the Trust's obligations under the Guaranty or how the Trust breached the Guaranty; and does not mention the connection, if any, between the consent standard under Section 5.6 of the Guaranty and the consent standard set forth in Section 15 of the Mortgage. In fact, the complaint's allegations

focus exclusively on the Trust's alleged breach of Section 15 of the Mortgage. *See* Dkt. No. 1-2 at ¶ 23 ("On March 6, 2008, and *in accordance with Section 15(c) of the Mortgage*, Plaintiff (through his counsel) transmitted via email a letter to [KeyBank]." (emphasis added)), ¶ 47 ("On June 23, 2018, Fuller, *in violation of the Mortgage* – as well as in violation of KeyBank's duties and responsibilities pursuant to the PSA - issued a 'Termination Letter . . . .'" (emphasis added)). Juza's conclusory allegation of the Trust's breach under the Guaranty is therefore insufficient to state a plausible claim for relief.

Second, under the Guaranty, Juza waived this claim. Article 2 and Section 2.13 of the Guaranty provide in pertinent part: "Guarantor hereby . . . waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which Guarantor might otherwise have as a result of or in connection with any of the following . . . [a]ny other action taken or omitted to be taken with respect to the Loan Documents . . . whether or not such action or omission prejudices Guarantor." Dkt. No. 13-7 at 5, 7. Under this language, Juza waived any right, as Guarantor, to claim personal prejudice or to seek a remedy at law or in equity related to the Lender's actions or inactions under the Loan Documents between Juza II and the Lender. Therefore, to the extent that Juza attempts to allege that the Trust was obligated to approve the assignment of Juza's duties and obligations to Schmidt LLC under Section 5.6 of the Guaranty according to the consent standard in Section 15 of the Mortgage, Juza has waived that claim. Juza's failure to state and waiver of a breach of contract claim under the Guaranty also defeats any attendant breach of the covenant of good faith and fair dealing claim he seeks to raise under the Guaranty.

As a final matter, Juza's claim that he suffered a "direct injury" for which he, as Guarantor, can pursue individual relief fails. *See First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1071 (Ill. App. Ct. 1990) ("[G]uarantors who suffer 'direct injury' have standing to 'pursue their

19

own remedies.'" (citation omitted)). Not only does Section 45 of the Mortgage independently bar such a right, but also Juza fails to contend that he suffered a direct, as opposed to a derivative, injury. Juza argues that the Trust's failure to consent to the sale of his equity interests in Juza II to Schmidt LLC caused him direct damage, but he brings such a claim under Section 15 of the Mortgage, which only requires that Juza II seek the Trust's consent on such a sale. Because Juza II and the Trust were the only parties to the Mortgage and only Juza II was restricted thereunder, any claim Juza seeks to bring under the Mortgage would be derivative of Juza II's injuries, and therefore Juza lacks standing to sue directly. *See Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1336 (7th Cir. 1989). In other words, a successful breach of contract suit by Juza II based on the Trust's failure to consent under Section 15 of the Mortgage would put Juza in the position he would have occupied had the Trust lived up to its promises, meaning Juza's injury is derivative and therefore cannot be pursued directly. *See id.* Juza's erroneous belief that Section 15 of the Mortgage restricted his ability to sell his equity interests in Juza II—again, that section of the Mortgage rendered Juza II in default of the Loan in the event that it did not seek and obtain consent from the Lender before any interests in it were sold or transferred—does not transform his derivative injury into a direct one.

## CONCLUSION

For the foregoing reasons, Juza's motion for leave to file a sur-reply (Dkt. No. 27) is **GRANTED**, the defendants' motion to dismiss (Dkt. No. 12) is **GRANTED**, and Juza's complaint is **DISMISSED with prejudice**. The Clerk is instructed to enter judgment accordingly.

**SO ORDERED** this __5th__ day of June, 2019.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court